**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**MARC JONES CONSTRUCTION, L.L.C.**
**d/b/a SUNPRO SOLAR**                                                    **PLAINTIFF**

**v.**                                   **Case No. 4:21-cv-00158-KGB**

**JOSEPH SCARIANO**
**and ATLANTIC KEY ENERGY, LLC**                               **DEFENDANTS**

## ORDER

Before the Court are plaintiff Marc Jones Construction, L.L.C. d/b/a Sunpro Solar's ("Sunpro") motion for temporary restraining order and preliminary injunction, supplemental motion for temporary restraining order and preliminary injunction, and defendants Joseph Scariano and Atlantic Key Energy, LLC's ("AKE") (jointly "defendants") motion to dismiss (Dkt. Nos. 2, 8, 11). For the reasons discussed in this Order, the Court denies defendants' motion to dismiss and declines at this time to address the merits of Sunpro's motion and supplemental motion for temporary restraining order and preliminary injunction (Dkt. Nos. 2, 8, 11).

As the Court discussed with counsel during the hearing on these pending motions, this case is procedurally complex. Therefore, in the light of the Court's ruling in this Order, the Court will permit counsel and the parties to confer and to file with the Court on or before 5:00 p.m. CST March 11, 2021, alternate proposals for how the parties intend to proceed. For the reasons set out in this Order, unless a party files with the Court a timely alternate proposal that is acceptable to the Court, the Court intends to direct the immediate transfer of this action to the United States District Court, Southern District of Texas, located in Houston, Texas, through a separate transfer Order.

## I.    Background

### A.    Sunpro

Based on its filings, Sunpro is a leading provider of residential and commercial solar energy systems and has been widely recognized as one of the fastest growing solar companies in the country (Dkt. No. 3, at 3).  Founded in Louisiana in 2008, Sunpro has grown over the last decade to employ more than 2,000 employees and has sold and installed more than 25,000 solar systems for customers across 16 states including Texas, Louisiana, Florida, Oklahoma, New Mexico, Arkansas, Missouri, Illinois, Virginia, Arizona, Tennessee, Kansas, Mississippi, Georgia, South Carolina, and North Carolina (*Id.*, at 3-4).

In July 2020, Sunpro was named the fifth largest solar rooftop contractor nationwide by Solar Power World Magazine (*Id.*, at 4).  In August 2020, it was ranked number 372 in the "Inc. 5000" list of the nation's fastest growing private companies, with three-year growth of 1,235% (*Id.*).  Sunpro's founder and chief executive officer Marc Jones has twice been named an "EY Entrepreneur of the Year Finalist" (*Id.*).  Sunpro states that it is known for being one of the best in the business, with a powerful sales organization (*Id.*).  Sunpro asserts that its success is due largely to its sales strategies, marketing techniques, training, financial data, research and development, customer information, educational programs, processes, compensation plans, and other confidential information and procedures developed over years and at Sunpro's expense of considerable time, money, and other resources (*Id.*).

According to Sunpro, one of Sunpro's most significant investments is in its frontline communications teams—it's salesforce—that are responsible for identifying and educating homeowners and businesses on the benefits and values of rooftop solar systems and making the sales that drive Sunpro's entire business (*Id.*).  In recent years, Sunpro has engaged in a growth

strategy that includes a focus on expanding its sales team, which now numbers more than 600 sales representatives nationwide (*Id.*, at 5).  That number continues to grow monthly (*Id.*).

### B.    Mr. Scariano's Employment At Sunpro

According to Sunpro, Mr. Scariano is from Mandeville, Louisiana, the location of Sunpro's home office (*Id.*).  Mr. Scariano graduated from Louisiana State University in May 2018 with a degree in sports administration (*Id.*).  Before working at Sunpro, Mr. Scariano worked in Kentucky as an oil and gas technician and in a construction job overlooking job sites and ordering needed materials (*Id.*).

In July 2019, Mr. Scariano applied for a job in Sunpro's Little Rock region (*Id.*).  He was 25 years old (*Id.*).  Sunpro offered Mr. Scariano a job as a Solar Energy Specialist based in the Little Rock office (*Id.*).  In addition to standard compensation, Mr. Scariano was offered insurance benefits, a 401(k) plan, a monthly car reimbursement (until a company vehicle became available), and a fuel card (*Id.*, at 5-6).  Sunpro also provided Mr. Scariano with a company iPad and printer to help him sell (*Id.*, at 6).  Sunpro was clear that its offer of employment was contingent on, among other things, signing Sunpro's "unaltered Employment Agreement" (*Id.*).  Mr. Scariano signed and accepted the offer on August 1, 2019 (*Id.*).

Mr. Scariano travelled to Mandeville, Louisiana, for his initial training (*Id.*, at 9).  Based on Sunpro's representations, Sunpro's training includes live presentations about Sunpro's products, marketing strategy, educational and customer information, sales methods, proprietary sales-presentation software, design elements, pricing and cost strategies, market data and analytics, and lead-generation techniques (*Id.*).  The Sunpro training program also includes Sunpro-produced videos, which sales representatives are able to access during and after their training through links to password-protected videos on YouTube (*Id.*, at 10).  Likewise, sales reps have access to a library

of password-protected Sunpro-generated video training, known as Lessonly, for training and continuing education (*Id.*).  Sunpro's training also includes testing that all employees must pass to ensure that they fully understand the company's products and systems, are providing accurate information to customers, and are operating in a cohesive way across locations (*Id.*).  As part of this training, new employees are also taught how to use and operate Sunpro's customer-relationship-management ("CRM") system, the types of information to be reported into the Salesforce system, and how to document properly that information (*Id.*).

Sunpro sales representatives, including Mr. Scariano, also have access to Sunpro's proprietary proposal-generating software, known as Sunlighten; its referral application; and its zip-code level data on the most effective forms of marketing and customer information (*Id.*).  Sunpro considers its training and information to be "confidential trade secrets" and requires employees such as Mr. Scariano to sign agreements limiting the use of this information both during and after their employment (*Id.*).

Over his 18 months of employment as a sales representative at Sunpro, Mr. Scariano was very successful.  On Friday, February 5, 2021, Mr. Scariano received a Sunpro President's Club trophy, which is given— along with a new Mercedes—to Sunpro's top sales representatives (*Id.*, at 12).  Mr. Scariano received the award for having $5.1 million in sales in 2020 (*Id.*).  Sunpro had previously offered Mr. Scariano an opportunity to move into a management position in 2020, but he declined because, according to Sunpro, he knew he was on pace to earn a Mercedes (*Id.*).

The next Monday, February 8, 2021, Mr. Scariano announced that he was leaving Sunpro (*Id.*).  He was reluctant to speak about it, noting that he had signed a nondisclosure agreement with his new employer and that his new employer did not yet have an office in Arkansas (*Id.*).  Mr. Scariano explained that he would be helping his new employer to build the sales team and sales

operation as a regional sales manager (*Id.*).  Mr. Scariano expressed that he was grateful for all the help and training he had received from Sunpro and that it would help him in his new endeavor (*Id.*).

Sunpro eventually learned that Mr. Scariano's new employer was AKE, a Sunpro competitor based in Florida (*Id.*).  AKE had registered to do business in Arkansas just a few weeks before Mr. Scariano's departure, on January 13, 2021 (*Id.*, at 14).  AKE had registered in Florida in March 2019, just a few months before Mr. Scariano had joined Sunpro.  According to Sunpro, AKE recently updated its "Cities We Serve" webpage to include many cities in which Mr. Scariano sold for Sunpro (*Id.*; Dkt. No. 11).  In November 2020, the webpage did not list a single Arkansas city (*Id.*).  Mr. Scariano took at least three trips to Florida between November 2020 and January 2021, and Sunpro now believes that these trips were for the purpose of developing a relationship with AKE (Dkt. No. 3, at 14)   Sunpro has also learned that, in November 2020, Mr. Scariano tried to convince two other Sunpro employees to leave with Mr. Scariano when the time was right (*Id.*).

### C.    Sunpro And Mr. Scariano's Confidentiality And Employment Agreement

When Mr. Scariano accepted employment with Sunpro, he and Sunpro entered into Sunpro's "Confidentiality and Employment Agreement" (the "Agreement") (Dkt. No. 1, Ex. 4). The Agreement defined Sunpro's business as "providing energy efficient consultation, solar panel sales and installation, and energy efficiency systems and products."  (*Id.*, at 6; Dkt. No. 1, Ex. 4). Sunpro alleges that the Agreement sought to set out the "give-and-take" of the "Sunpro-Scariano relationship" and "placed certain limitations on Scariano's actions within that sphere, both during and a reasonable time after his employment." (Dkt. No. 3, at 6).

Section 2 of the Agreement includes a confidentiality provision.  In relevant part, it states:

2.      <u>Confidentiality</u>.  Employee understands and agrees that information developed by or disclosed to Employee in the performance of his/her duties hereunder, including, without limitation, information relating to identities of the Company's [Sunpro] customers, prospective customers (including the sourcing of actual and prospective customers), suppliers, subcontractors, and employees; pricing of the Company's services and its profit margins; the Company's processes, technologies, and technological and other developments; the Company's methods and specialized equipment used in providing the Company's services; and any other business or technical information or trade secret of the Company (collectively, the "Confidential Information") is proprietary and confidential and represents a valuable, special and unique asset of the Company, the disclosure of which would cause continuing and irreparable injury to the Company.  Employee understands and acknowledges that the Company would not disclose the Confidential Information to him/her, even in connection with his/her employment by the Company, without his/her agreement not to divulge in any manner, at any time, for any purpose other than the exercise of his/her duties hereunder in the best interest of the Company, any of the Confidential Information.  Accordingly, Employee agrees not to divulge in any manner, at any time (whether during employment or after termination of employment), for any purpose other than the exercise of his/her duties hereunder in the best interest of the Company, any of the Confidential Information. . . .

(*Id.*, 6-7; Dkt. No. 1, Ex. 4, ¶ 2).

Section 3 of the Agreement, the Agreement's return-of-information provision, states:

3.      <u>Return of Documents and Materials</u>.  All memoranda, notes, lists, records, drawings, technical specifications and related documents and other documents or papers (and all copies thereof) relating to the Company and all documents containing Confidential Information, including such items stored in computer memories, emails or by any other means, made or compiled by or on behalf of Employee after the date hereof, or made available to Employee after the date hereof relating to the Company shall be the property of the Company, and shall be delivered to the Company promptly upon the termination of Employee's employment with the Company or at any other time upon request.

(*Id.*, 7-8; Dkt No. 1, Ex. 4, ¶ 3).

Section 5, the Agreement's non-solicitation-of-employees provision, states that, during his employment and for one year afterward (the "Restricted Period"), Mr. Scariano may not directly or indirectly induce, solicit, or encourage any Sunpro employee, contractor, or vender to leave or cease doing business with Sunpro (*Id.*, Dkt. No. 1, Ex. 4, ¶ 5).

6

Section 6 of the Agreement, the "noncompete and non-solicitation of customers" provision, states in full:

> The Company places a high value on maintaining the confidentiality and value of Confidential Information as described in this Agreement.  The Company promises that, upon and after Employee's execution of this Agreement, it will disclose to Employee its Confidential Information and will provide Employee specialized training concerning its business.  The Confidential Information and specialized training provided which performs solar system sales and/or installation, energy efficiency consultation, or other services materially to Employee will be that necessary for the Employee to perform his/her job.

> In exchange for the Company's agreement to disclose Confidential Information and provide specialized training, Employee agrees that, during the Restricted Period, Employee will not, directly or indirectly, own, manage, operate, control, be employed by, perform services for, consult with, solicit business for, participate in, or be connected with the ownership, management, operation, or control of any business similar to or competitive with those provided by the Company, within a fifty (50) mile radius of any office where the Employee has officed or sold products (including within a twenty (20) mile radius of areas in which Employee had sales responsibility in locations that do not have a physical Company office) or provided services to customers during the period of Employee's employment with the Company.

> In addition, during the Restricted Period, Employee will not directly or indirectly solicit Company Clients or Prospective Clients with whom Employee had a business relationship during the last two years of employment, expressly including referrals from Company Clients, for business, products, goods, or services offered by Company or for business, products, goods, or services that are a substitute for those offered by the Company, or for business, products, goods, or services that as of the date of Employee's separation, the Company was planning to offer to Company Clients or Prospective Clients in the near future.

(*Id.*, 8-9; Dkt. No. 1, Ex. 4, ¶ 6).

Relevant to this Court's consideration of the present motions, the Agreement also contains a choice of law clause and a forum selection clause, which state:

> 11.    Applicable Law.  This Agreement shall be construed in accordance with the laws of the State of Texas, without regard to the principles of conflicts of law, even if Employee executed this Agreement outside Texas, and even if some or all of Employee's services are to be rendered outside Texas.

12. <u>Consent to Jurisdiction and Venue</u>.  The parties hereto hereby irrevocably submit to the exclusive jurisdiction of the courts of the State of Texas and the federal courts of the United States of America located in Houston, Texas, and appropriate appellate courts therefrom.  The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection that they may now or hereafter have to the laying of venue of any suit for injunctive relief arising out of or relating to this Agreement brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  This consent to jurisdiction is being given solely for purposes of this Agreement and is not intended to, and shall not, confer consent to jurisdiction with respect to any other dispute in which a party to this Agreement may become involved.

(Dkt. No. 1, Ex 4, ¶¶ 11-12).

### D.  **Sunpro Files Suit**

On March 1, 2021, Sunpro filed suit, naming as defendants Mr. Scariano and AKE and alleging five causes of action:

> Count 1 – Violations of Defend Trade Secrets Act, 18 U.S.C. § 1836(b), as to Mr. Scariano and AKE;
> Count 2 – Breach of Confidentiality and Employment Agreement, as to Mr. Scariano;
> Count 3 – Violations of Arkansas Trade Secrets Act, Ark. Code Ann. § 4-75-601, *et seq*., as to Mr. Scariano and AKE;
> Count 4 – Accounting and Restitution, as to Mr. Scariano and AKE; and
> Count 5 – Interference with Contract and Business Expectancy, as to AKE.

Along with its verified complaint, Sunpro filed a motion for temporary restraining order and preliminary injunction (Dkt. No. 2).  On March 3, 2021, defendants filed a motion to dismiss (Dkt. No. 8).  This Court conducted a telephonic hearing regarding both pending motions on March 4, 2021.  Sunpro and defendants submitted additional briefing after the hearing (Dkt. Nos. 10-14).

### II.  **Filing In This Court**

This Court concludes that, putting aside analysis of the Agreement's forum selection clause, this Court has personal jurisdiction over defendants and venue is proper in this Court.

In this action, Sunpro brings state law and federal claims against defendants Mr. Scariano and AKE.  A federal court may exercise personal jurisdiction over a defendant if the plaintiff has

properly served the defendant with process under the forum state's long-arm statute and if the defendant has sufficient contacts with the forum state to satisfy procedural due process.  *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072-73 (8th Cir. 2004) (examining claims based on diversity jurisdiction); *Enter. Rent-A-Car Co. v. U-Haul Int'l, Inc.*, 327 F. Supp. 2d 1032, 1036 (E.D. Mo. 2004) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, Ltd., 484 U.S. 97, 104–05 (1987); *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir.2002)) (examining federal claims). Defendants have not challenged service of process before this Court.  Further, Arkansas's long-arm statute is coextensive with the limits of due process; therefore, the only question is whether due process requirements are met in this instance.  *Dever*, 380 F.3d at 1073; *Davis v. St. John's Health Sys., Inc.*, 71 S.W.3d 55, 58 (Ark. 2002).

Personal jurisdiction is established by a showing that the defendant maintains sufficient minimum contacts with the forum state "such that summoning the defendant would not offend traditional notions of fair play and substantial justice."  *Dever*, 380 F.3d at 1073.  The central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there.  *Id.*  With these principles in mind, the Court looks at five distinct factors:  (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties.  *Id.* at 1073-74.  "Specific jurisdiction can only be found if the controversy is 'related to' or 'arises out of' 'the defendant's contacts with the forum state.'"  *Johnson v. Woodcock,* 444 F.3d 953, 956 (8th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  "General

jurisdiction exists where the contacts between the defendant and the forum state are 'continuous and systematic' even if there is no relationship between the contacts and the cause of action." *Id.*

Sunpro's dispute against Mr. Scariano and AKE arises out of Mr. Scariano's past work for Sunpro which is alleged to have taken place mostly in Arkansas; AKE's current employment of Mr. Scariano; and the alleged conduct of AKE and Mr. Scariano with respect to their conducting the business of solar sales in Arkansas purportedly in violation of Mr. Scariano's Agreement with Sunpro and applicable trade secrets laws, as cited in Sunpro's verified complaint (Dkt. No. 1, ¶ 6). This Court has considered the allegations in this case, among them that AKE recently hired Mr. Scariano; recently registered to do business in Arkansas; and recently updated its website to reflect that, among the areas in Arkansas where it conducts business, are areas in Arkansas where Mr. Scariano previously sold Sunpro products. At this stage of the litigation, the Court concludes it has specific personal jurisdiction over Mr. Scariano and AKE in Arkansas to resolve the claims brought by Sunpro.

With respect to venue in this Court, 28 U.S.C § 1391 states that, "[e]xcept as otherwise provided by law. . . this section shall govern the venue of all civil actions brought in district courts of the United States." 28 U.S.C. § 1391(a)(1). It further provides that:

> A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Sunpro alleges that venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the dispute occurred in the State of Arkansas, based on the allegations

in its verified complaint (Dkt. No. 1, ¶ 7).  The Court agrees and finds that venue is proper, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to Sunpro's claims are alleged to have occurred in Arkansas.

Having determined that this Court has personal jurisdiction over defendants and that, without regard to the Agreement's forum selection clause, venue is proper in this Court, the Court turns to examine the pending motions.

### III.    Defendants' Motion To Dismiss

Before the Court considers Sunpro's motion for temporary restraining order and preliminary injunction, it must address the challenges raised in defendants' motion to dismiss. Defendants argue that this lawsuit "cannot be adjudicated in this forum as a matter of law" due to Sunpro and Mr. Scariano's Agreement's forum selection clause (Dkt. No. 8, at 1).  Because the Court concludes that defendants are correct that this is the inappropriate forum for this suit, the Court declines to rule on Sunpro's motion and supplemental motion for temporary restraining order and preliminary injunction.

### A.    Legal Basis For Motion To Dismiss

In their motion to dismiss, defendants do not cite a specific statute or Federal Rule of Civil Procedure as controlling their request that this Court dismiss this action.  Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint on the basis of improper venue.  Fed. R. Civ. P. 12(b)(3).  However, the Supreme Court determined in *Atlantic Marine Construction, Co. v. United States District Court for the Western District Of Texas*, 571 U.S. 49, 58-59 (2013), that the exclusive avenue for relief when seeking to enforce a forum selection clause such as the one in the Agreement between Sunpro and Mr. Scariano is either a motion brought pursuant to 28 U.S.C. § 1404(a) or the doctrine of *forum non conveniens*, not Rule

12(b)(3).  *See BH Services Inc. v. Fce Benefit Adm'rs Inc.*, Civ. No. 16-5045, 2017 WL 3635186, at *3 (Aug. 23, 2017) (citing *Atl. Marine*, 571 U.S. at 58-59); *see also Kanza Constr., Inc. v. Kansas City Southern Railway Co.*, 13 F.Supp.3d 985 (W.D. Mo. 2014).

Section 1404(a) states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "[T]he purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  As a preliminary matter, the venue to which transfer is requested must be one in which the suit could have originally been brought or to which all parties have consented.  28 U.S.C. § 1404(a); *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964).  The Court will examine this issue in its analysis.  Further, because § 1404(a) contemplates transfer only of an entire "civil action," the Court in its analysis will assess whether it would be unfair to transfer this entire "civil action," including Sunpro's claims against Mr. Scariano, who signed the Agreement, and claims against AKE, which did not sign the Agreement. *See PNC Bank, Nat'l Ass'n v. MAC Meetings & Events, LLC Cisco Sys., Inc.*, No. 4:18-CV-1967-SPM, 2020 WL 3578574, at *11 (E.D. Mo. July 1, 2020).

### B.    Enforcement Of The Agreement's Forum Selection Clause

#### 1.    Legal Standard

The Eighth Circuit Court of Appeals appears to hold that a district court must apply federal law to the question of whether to enforce a forum selection clause.  *Union Elec. Co. v. Enery Ins. Mut. Ltd.*, 689 F.3d 968 (8th Cir. 2012).  Forum selection clauses are *prima facie* valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or

overreaching. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). *Atlantic Marine* makes clear that "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" 571 U.S. at 59-60 (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). They are enforceable unless they would actually deprive the opposing party of his fair day in court. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-95 (1991).

"In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997); *see also K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 598 (8th Cir. 2011) ("The defendant has the burden of persuasion in proving all elements necessary for the court to dismiss a claim based on *forum non conveniens*"). The Eighth Circuit has "declined to offer an 'exhaustive list of specific factors to consider' in making the transfer decision[.]" *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (quoting *Terra Int'l*, 119 F.3d at 691). Instead, district courts considering a motion to transfer under § 1404(a) or for *forum non conveniens* "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 571 U.S. at 62. Private factors include the "plaintiffs' choice of forum" and generally relate to the "practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981)). In contrast, "[p]ublic-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.*

Along with these factors identified by the *Atlantic Marine* Court, the Eighth Circuit in *Terra International*, *Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 696 (8th Cir. 1997), identified factors to be considered when resolving motions to transfer.  The *Terra International* court identified the following as "balance of convenience" factors:  (1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.  *Terra Int'l*, 119 F.3d at 696.  With regard to "interest of justice" factors, the *Terra International* court identified these factors:  (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.  *Id.*

When the parties have agreed to a valid forum selection clause, the § 1404(a) analysis is altered in three ways.  *Atl. Marine*, 571 U.S. at 62-67.  "First, the plaintiff's choice of forum merits no weight.  Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."  *Id.* at 63.  Second, a district court may not consider arguments about the parties' private interest, but public-interest factors only.  *Id.* at 64 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.").  Third, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations."  *Id.* at 64-65.

Although the Supreme Court did not distinguish between different kinds of forum selection clauses in its *Atlantic Marine* decision, the Eighth Circuit recognizes both mandatory and permissive forum selection clauses. *Dunne v. Libbra*, 330 F.3d 1062, 1063 (8th Cir. 2003). "Mandatory forum-selection clauses require a case to be brought in an identified venue based on 'specific language indicating the parties' intent to make jurisdiction exclusive.'" *High Plains Const., Inc. v. Gay*, 831 F.Supp.2d 1089, 1102 (S.D. Iowa 2011) (citing *DataCard Corp. v. Softek, Inc.*, 645 F.Supp.2d 722, 729 (D. Minn. 2007)). "Permissive forum-selection clauses, on the other hand, 'constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in any other forum.'" *Id.* (quoting *DataCard Corp.*, 645 F.Supp.2d at 729). *Atlantic Marine* discussed a mandatory forum selection clause where "a plaintiff agrees by contract to bring suit only in a specified forum." *Atl. Marine*, 571 U.S. at 63. Generally, courts apply *Atlantic Marine's* limitations on a § 1404(a) transfer analysis only to cases involving mandatory forum selection clauses. *See, e.g., Waste Mgmt. of La., L.L.C. v. Jefferson Parish ex rel. Jefferson Parish Council*, 594 Fed. Appx. 820, 821-22 (5th Cir. Nov. 28, 2014) (declining interlocutory appeal of district court's decision declining to transfer case to enforce a permissive forum selection clause, noting that the vast majority of courts have refused to apply *Atlantic Marine* to permissive forum selection clauses); *GDG Acquisitions, LLC v. Government of Belize*, 749 F.3d 1024 (11th Cir. 2014); *Perficient, Inc. v. Priore*, Civ. No. 16-249, 2016 WL 866090, at *3 (E.D. Mo. Mar. 7, 2016); *RELCO Locomotives, Inc. v. AllRail, Inc.*, 4 F.Supp.3d 1073, 1085 (S.D. Iowa 2014); *but see United Am. Healthcare Corp. v. Backs*, 997 F.Supp.2d 741, 750 (E.D. Mich. 2014) (rejecting defendants' argument that "*Atlantic Marine* does not apply here because this case involves a permissive forum selection clause whereas the forum selection clause at issue in *Atlantic Marine* was mandatory.").

In the Eighth Circuit, determining whether a forum selection clause is mandatory or permissive is a legal issue of contract construction. *Dunne*, 330 F.3d at 1063. Where a forum selection clause specifies a venue with mandatory or obligatory language, an action on the contract may be maintained only in that specified venue. *Id.* Conversely, where a forum selection clause is merely permissive, "an action on the contract may be maintained in other reasonably convenient forums where personal jurisdiction exists." *Id.* The Eighth Circuit has determined that words such as "exclusive," "only," and "must" suggest exclusivity. *Id.* at 1064. The Fifth Circuit Court of Appeals, likewise, has explicitly stated "[a] party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another. For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive." *City of New Orleans v. Mun. Admin. Servs.,* 376 F.3d 501, 504 (5th Cir. 2004).

### 2.    Analysis

The forum selection clause titled "Consent to Jurisdiction and Venue" in the Agreement states:

> 12.    <u>Consent to Jurisdiction and Venue</u>.   The parties hereto hereby irrevocably submit to the exclusive jurisdiction of the courts of the State of Texas and the federal courts of the United States of America located in Houston, Texas, and appropriate appellate courts therefrom. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection that they may now or hereafter have to the laying of venue of any suit for injunctive relief arising out of or relating to this Agreement brought in such court or any defense of inconvenient forum for the maintenance of such dispute. This consent to jurisdiction is being given solely for purposes of this Agreement and is not intended to, and shall not, confer consent to jurisdiction with respect to any other dispute in which a party to this Agreement may become involved.

(Dkt. No. 1, Ex 4, ¶ 12).

Sunpro takes the position that the clause is permissive and that the clause applies only to disputes seeking injunctive relief arising out of or relating to the Agreement, nothing else (Dkt. No. 12, at 4, 10-16).  Sunpro raises concerns that, if all of Sunpro's claims against Mr. Scariano are transferred to Texas, Mr. Scariano might dispute personal jurisdiction in Texas over all claims but those seeking solely injunctive relief arising out of or relating to the Agreement (*Id.* at 4).

Sunpro has not argued that the Agreement is unjust, unreasonable, or invalid for any reason such as fraud, undue influence, or overreaching.  At this stage of the litigation, Sunpro has not clearly shown that the forum-selection clause is invalid.  In its motion for temporary restraining order and preliminary injunction, Sunpro cites to the Agreement almost exclusively in support of its request for temporary injunctive relief (Dkt. No. 2).

As to the public interest factors and the "interest of justice" factors identified by the *Terra International* court, for reasons explained in this Order, the Court determines that the Agreement's mandatory forum selection clause applies to covered claims and should be enforced.  Sunpro has not argued that there is extraordinary court congestion in Texas courts currently.  Sunpro argues that Arkansas has a specific interest in having this case decided in Arkansas, based upon the facts giving rise to this dispute.  The Court understands Sunpro to argue that this Court is the proper forum for suit because the majority of the challenged actions took place in Arkansas and because this Court likely has personal jurisdiction over all defendants, including Mr. Scariano, who Sunpro contends might challenge a Texas court's personal jurisdiction over him for claims not seeking injunctive relief arising out of or relating to this Agreement, and AKE, which Sunpro contends might challenge any Texas court's personal jurisdiction over AKE, if Sunpro's claims against AKE are transferred there (Dkt. No. 12, at 4-5).

Because Sunpro filed suit in Arkansas seeking injunctive relief against Mr. Scariano based on the Agreement in contravention of the Agreement's mandatory forum selection clause, the Court gives no deference to Sunpro's choice of forum or the comparative costs or convenience to the parties of litigating in each forum. *Atl. Marine*, 571 U.S. at 62-67. With respect to each party's ability to enforce a judgment and obstacles to a fair trial, on the record before it and for the reasons explained in this Order, the Court determines that there is no indication that these factors weigh against enforcement of the Agreement's mandatory forum selection clause. The Court observes that there is a Texas choice of law clause in the Agreement, indicating that Texas law may apply to at least the breach of contract claim brought by Sunpro in this action, which weighs in favor of enforcing the Agreement's mandatory forum selection clause.

For these reasons, the Court determines that the Agreement's forum selection clause is mandatory, not permissive, based upon Sunpro and Mr. Scariano's choice of language, and valid as between Sunpro and Mr. Scariano with respect to claims covered by the Agreement.

### C.      Parties And Claims Subject To The Forum Selection Clause

Questions remain as to which parties the Agreement's mandatory forum selection clause applies and as to which of Sunpro's claims the clause applies.

#### 1.      Parties

The Court considers whether the forum selection clause in the Agreement can be enforced by and against AKE, which unlike Mr. Scariano is not a signatory or party to the Agreement containing the clause. Under Eighth Circuit law, a non-party may be bound by a forum-selection clause where the non-party is "closely related to the dispute such that it becomes foreseeable that it will be bound." *Marano Enters. of Kan. v. Z–Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001) (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)). "This

standard does not call for a 'unity of interest' such that the third party and signatory party are 'indistinguishable.'  Rather, the appropriate inquiry is whether the third party reasonably should foresee being bound by the forum selection clause because of its relationship to the cause of action and the signatory to the forum selection clause." *Kleiman v. Kings Point Capital Mgmt., LLC*, No. 4:17-CV-2278-HEA, 2018 WL 3328012, at *4 (E.D. Mo. July 6, 2018) (citing *TLC Vision (USA) Corp. v. Freeman*, 2013 WL 230254, at *11 (E.D. Mo. Jan. 22, 2013)).  "To determine whether a party is closely related to the dispute, courts have looked to its common interests with the contracting party in the litigation." *Medtronic, Inc. v. Ernst*, 182 F. Supp. 3d 925, 932 (D. Minn. 2016).  "Most courts have also relied on the fact that the non-contracting party voluntarily associated itself with the contracting party in some type of legal process." *Id*.

Defendants cite to this Court the holding in *Medtronic, Inc. v. Endologix, Inc.*, 530 F.Supp.2d 1054, 1056-57 (D. Minn. 2008) (Dkt. No. 14, at 2-3).  There the district court determined, in a suit brought by a former employer against two former employees and their new employer, that the former employees who were signatories and the new employer who was not a signatory were bound by the forum selection clause in employment agreements between the former employer and former employees.  530 F.Supp.2d at 1056-57.  Defendants cite other cases in which courts have reached this same conclusion on facts similar to those presented here (Dkt. No. 14, at 2-3 (citing *Matthews Int'l Corp. v. Lombardi*, No. 2:20-cv-00089-NR, 2020 WL 1275692 (W.D. Pa. March 17, 2020) ("Where, as here, a former employee is bound by a restrictive covenant with a forum-selection clause, the clause may apply to the new employer who can foresee the forum-selection clause being an issue, but still moves forward with hiring."); *St. Jude Med., S.C., Inc. v. Biosense Webster, Inc.*, No. 12-621 ADM/AJB, 2012 WL 1576141 (D. Minn. May 4, 2012); *ELA*

*Medical, Inc. v. Arrhythmia Mgmt. Assocs., Inc.*, No. 06-3580, 2007 WL 892517 (D. Minn. Feb. 21, 2007)).

In resisting defendants' motion to dismiss, Sunpro maintains that AKE is not able to establish that it is so closely related to or contemplated by the Agreement so as to be bound by its forum selection clause (Dkt. No. 12, at 6).  Sunpro does not address or attempt to distinguish the reasoning or facts in *Medtronic, Inc. v. Endologix, Inc.* or the cases it cites.

Further, Sunpro raises the argument that, due to personal jurisdiction constraints, this action had to be brought in Arkansas and should remain in Arkansas.[1]  As an initial matter, this concern over personal jurisdiction implicates primarily those claims brought by Sunpro against AKE. Texas courts likely have personal jurisdiction over Mr. Scariano as a result of the language of the Agreement Mr. Scariano signed, *see St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc.,* 270 F.3d 621, 624 (8th Cir.2001) ("Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." (internal quotation marks and citations omitted)), and Arkansas courts have, at a minimum, specific personal jurisdiction over Mr. Scariano as a result of the facts giving rise to this dispute.

The Court acknowledges that, absent express waiver of an objection to personal jurisdiction in Texas, it is less clear whether state or federal courts in Texas would be permitted to exercise personal jurisdiction over AKE to resolve this dispute.  *See Guaranteed Rate, Inc. v. Conn*, 264 F.Supp.3d 909 (N.D. Ill. 2017) (examining whether, absent express waiver, a defendant may be found to have waived objection to personal jurisdiction based on a forum selection clause

---

[1] Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(1).  In its pending motion to dismiss, neither Mr. Scariano  nor AKE specifically raise an objection to personal jurisdiction in this Court, and this Court for reasons explained in this Order determines at this stage of the litigation that it has specific personal jurisdiction, at a minimum, over Mr. Scariano and AKE.

in a contract to which it is not a party).  However, personal jurisdiction is an individual right that

may be waived.  *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703

(1982).  A person may submit to the jurisdiction of the court by appearance, by not timely raising

the defense in an answer or responsive pleading, or by conduct that amounts to a "legal submission

to the jurisdiction of the court, whether voluntary or not."  *Id.* at 704-05.

During the hearing conducted in this matter, this Court inquired of counsel for Mr. Scariano

and AKE whether they would consent to Texas's personal jurisdiction for resolution of this

dispute.  Further, in a written filing with the Court, counsel for Mr. Scariano and AKE confirmed

this:  "Scariano and Atlantic unequivocally do – and believe they already did – consent to

jurisdiction in both Texas and Louisiana." (Dkt. No. 14, at 1).  In reaching its determination on

defendants' motion to dismiss, the Court specifically relies on the representation of counsel for

Mr. Scariano and AKE that Mr. Scariano and AKE consent to personal jurisdiction over them by

courts in Texas and Louisiana for resolution of this entire dispute.  *See Reed v. City of Arlington*,

650 F.3d 571, 574 (5th Cir. 2011) (discussing the equitable doctrine of judicial estoppel invoked

by a court at its discretion to protect the integrity of the judicial process when a party takes an

affirmative position in a proceeding and is successful in having the court adopt its position and

may then be judicially estopped from later taking an inconsistent position in that or in another

proceeding); *see also E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 679 (8th Cir. 2012)

(same).

### 2.    Claims

The Court next considers to which claims the Agreement's mandatory forum selection

clause applies.  "Whether certain claims are 'governed by forum selection provisions depends upon

the intention of the parties reflected in the wording of particular clauses and the facts of each

case.'" *Stacks v. Bluejay Holdings, LLC.*, No. 4:10CV00718, 2010 WL 3893990, at *3 (E.D. Ark. Sept. 29, 2010) (quoting *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 693 (8th Cir. 1997)).

Sunpro's "Count 2–Breach of Confidentiality and Employment Agreement"–must necessarily "arise from" and "relate to" the Agreement and is therefore bound by the Agreement's forum selection clause at least to the extent Sunpro seeks injunctive relief based on that claim.  In its operative complaint, Sunpro seeks preliminary and permanent injunctive relief against Mr. Scariano on this claim, and Sunpro also seeks damages from Mr. Scariano for any ascertainable losses (Dkt. No. 1, ¶ 61).  Sunpro raises the possibility that Mr. Scariano may take the position, if this lawsuit is transferred to Texas, that he consented to personal jurisdiction in Texas for claims for injunctive relief only, based on the language of the Agreement (Dkt. No. 12, at 4-5).  Based upon the representation of defendants' counsel, this Court understands that Mr. Scariano has consented to Texas's personal jurisdiction over him for resolution of this entire dispute, waiving any objection to personal jurisdiction as to all claims asserted by Sunpro.  In reaching its determination on defendants' motion to dismiss, the Court specifically relies on the representation of counsel for Mr. Scariano and AKE that Mr. Scariano and AKE consent to Texas's personal jurisdiction over them for resolution of this dispute.

Because it necessitates analysis and application of the Agreement, the Court concludes that Sunpro's "Count 5–Interference with Contract and Business Expectancy" asserted against AKE— must necessarily "arise from" and "relate to" the Agreement.  In *Terra International*, the Eighth Circuit considered whether a forum selection clause's "arising between" language covered only those claims "arising under the license agreement" or included claims of breach of common law tort duties.  *Terra Int'l*, 119 F.3d at 692-93.  The Eighth Circuit stated that a "majority of cases

22

suggests that such clauses do apply to tort claims." *Id.* at 693.  The court reviewed guiding principles set out by the First, Third, and Ninth Circuits, analyzing whether the "tort claims 'ultimately depend on the existence of a contractual relationship' between the parties," *Id.* (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir.), *cert. denied*, 464 U.S. 938 (1983)); "whether resolution of the claims relates to interpretation of the contract," *Id.* (citing *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir.1988)); and whether "contract-related tort claims involv[e] the same operative facts as a parallel claim for breach of contract," *Id.* (citing *Lambert v. Kysar*, 983 F.2d 1110, 1121–22 (1st Cir.1993)).  The *Terra International* court ultimately found the First Circuit's approach "most revealing" and concluded that the "tort claims at issue involve[d] the same operative facts as would a parallel breach of contract" and were therefore also subject to the forum selection clause at issue.  *Terra Int'l*, 119 F.3d at 695.  Applying this analysis to the facts as alleged in Sunpro's verified complaint, this Court reaches the same conclusion and determines that Sunpro's interference with contract and business expectancy claim asserted against AKE likely involves the same operative facts as the breach of contract claim asserted against Mr. Scariano.  The Court has considered *Carson v. Road Knights, Inc.*, Case No. 4:20-cv-00519-BRW, 2020 WL 5579780 (E.D. Ark. Sept. 17, 2020), as cited by Sunpro and finds the facts of this case distinguishable from those in *Carson* (Dkt. No. 12, at 15-16).

Applying the Eighth Circuit's reasoning, the Court also considers whether Sunpro's statutory claims Counts 1 and 3, under the Defend Trade Secrets Act and Arkansas Trade Secrets Act, are also covered by the Agreement's "arising from or relating to" language.  Even though they are statutory claims, strong arguments can be made that the trade secret claims asserted by Sunpro likely involve the same operative facts as Sunpro's contract-based claims.  Sunpro itself

23

considers its training and information, which Sunpro argues is also protected by the Agreement, to be "confidential trade secrets" (Dkt. No. 3, at 10).  Though AKE is not a signatory to the Agreement, Sunpro is challenging specifically the alleged misuse or potential misuse of confidential information, including trade secrets, that AKE allegedly may gain through its current employee Mr. Scariano, who is bound by the Agreement.

With respect to Sunpro's Count 4—Accounting and Restitution—there is a strong argument that it should be considered as falling under the forum selection clause as well, since there will be no accounting or restitution without first deciding Sunpro's other claims.

For reasons explained in this Order, however, the Court determines that it need not resolve whether all of Sunpro's claims are covered by the Agreement.  If they are covered, they should be transferred based on the language of the Agreement's mandatory forum selection clause and for reasons set out in this Order.  If they are not covered, those claims still should be transferred to Texas along with Sunpro's breach of contract claim for injunctive relief against Mr. Scariano for reasons explained in this Order.

To the extent any argument could be made that the Court should transfer only Sunpro's breach of contract claim for injunctive relief against Mr. Scariano and should keep all other claims in this Court, the Court examines such an argument under Federal Rule of Civil Procedure 21 regarding severance.  Rule 21 provides, in relevant part, that "[t]he court may. . . sever any claim against a party."  Fed. R. Civ. P. 21.  "Severance under Rule 21 is committed to the Court's sound discretion, and in exercising that discretion, courts typically consider the same general factors elucidating the § 1404(a) analysis. . . ."  *Valspar Corp. v. E.I. DuPont de Nemours & Co.*, 15 F. Supp. 3d 928, 932 (D. Minn. 2014) (internal citation omitted).  Where a court is confronted with a forum selection clause that applies to some, but not all, of the claims in an action, the court may

sever those claims from the others, create a new civil action, and transfer the new civil action pursuant to 28 U.S.C. § 1404(a).  *See Valspar*, 15 F. Supp. 3d at 931, 935 (severing plaintiffs' claims against different defendants into two actions based on different forum selection clauses and transferring each action to a different court); *PNC Bank, Nat'l Ass'n v. MAC Meetings & Events, LLC Cisco Sys., Inc.*, No. 4:18-CV-1967-SPM, 2020 WL 3578574, at *11 (E.D. Mo. July 1, 2020) (severing claims and transferring only some of the claims due to governing forum selection clause); *Hernandez v. Tex. Capital Bank, N.A.*, No. 07-0726-CV-W-ODS, 2008 WL 342758, at *4 (W.D. Mo. Feb. 5, 2008) (severing claims and transferring only some of the claims where one group of plaintiffs was bound by a forum selection clause and the rest were not).

Litigating all of Sunpro's claims in this case will involve much of the same evidence and many of the same witnesses.  Relevant considerations weigh in favor of transferring all claims, not severing those Sunpro contends are not subject to the Agreement's mandatory forum selection clause.  Judicial economy will be achieved by transferring all claims to Texas, which was Sunpro and Mr. Scariano's choice of forum at least for claims for injunctive relief arising out of or relating to the Agreement.  Mr. Scariano and AKE waive any objection to personal jurisdiction being exercised by courts in Texas and Louisiana over all claims raised in this dispute.

For the foregoing reasons, the Court concludes that the parties sued by Sunpro have consented to jurisdiction in Texas, which is the forum specified in the Agreement's mandatory forum selection clause, and that all of the claims brought by Sunpro should be transferred.  Therefore, the Court refrains from deciding plaintiff's motion and supplement to motion for temporary restraining order and preliminary injunction (Dkt. Nos. 2, 11).

### D.        Dismissal Or Transfer

The issue now before this Court is whether the forum selection clause in the Agreement requires that this Court dismiss under the *forum non conveniens* doctrine or instead transfer pursuant to 28 U.S.C. § 1404(a) Sunpro's claims.  Defendants move to dismiss Sunpro's claims on the basis of the Agreement's forum selection clause, arguing that this lawsuit cannot be adjudicated in this forum (Dkt. No. 8-1).  Defendants maintain that "where, as here, a forum-selection clause provides for venue in multiple yet specific fora, dismissal—rather than transfer— is the proper outcome."  (Dkt. No. 8-1, at 3) (citing *Hisey v. Qualtek USA, LLC*, 753 F. App'x 698, 703-04 (11th Cir. 2018); *D&M Concrete v. Wegmans Food Mkts.*, No. 12-CV-01560, 2012 U.S. Dist. LEXIS 204404, at *2 n.3 (E.D. Pa. Dec. 26, 2012); *GMAC Commer. Credit v. Dillard Dep't Stores*, 198 F.R.D. 402, 409 (S.D.N.Y. 2001) (noting "the forum selection clause . . . permits suit to be brought in both the federal district court and in state courts" and reasoning dismissal, not transfer, was proper)).

None of the parties filed a motion to transfer or argued for a transfer.  *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 52 ("When a defendant files [a motion to transfer under § 1404(a)], we conclude, a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer.").  The Court is not required to *sua sponte* treat defendants' motion to dismiss as a motion to transfer.  *See Hisey v. Qualtek USA, LLC*, 753 F. App'x 698, 704 (11th Cir. 2018).  Sunpro argues that "Section 1404, rather than the doctrine of forum non coveniens, applies, and the remedy available – if any – is transfer to the Southern District of Texas." (Dkt. No. 12, at 8).  Sunpro then argues that "[t]his remedy is also improper in this case" for the specific reasons it sets out in its filing (*Id.*).  Upon review of the parties' arguments, the

26

Court determines that both justice and judicial efficiency may best be served through transfer, not dismissal.

The Court is inclined to transfer this action to the United States District Court in the Southern District of Texas located in Houston, Texas, pursuant to the Agreement and 28 U.S.C. § 1404(a).  The Agreement's mandatory forum selection clause provides for exclusive jurisdiction of the courts of the State of Texas and the federal courts of the United States of America located in Houston, Texas, and appropriate appellate courts therefrom for covered claims.  There is no basis in the Agreement for this Court to transfer this action to courts in Louisiana, despite defendants' agreement to be subject to jurisdiction of courts in Louisiana.  Further, Sunpro asserts federal claims alleging violations of Defend Trade Secrets Act, 18 U.S.C. § 1836(b), as to Mr. Scariano and AKE, thereby giving rise to federal question jurisdiction.  All of this weighs in favor of transferring to the federal courts located in Houston, Texas.  Moreover, as a practical matter, this Court is unable to transfer a case to Texas state courts; it may only transfer this action to other federal courts, like the federal courts of the United States of America located in Houston, Texas, as specified in the Agreement.

As the Court discussed with counsel during the hearing on these pending motions, this case is procedurally complex.  Therefore, in the light of the Court's ruling in this Order, the Court will permit counsel and the parties to confer and to file with the Court on or before 5:00 p.m. CST March 11, 2021, alternate proposals for how the parties intend to proceed.  For the reasons set out in this Order, unless a party files with the Court a timely alternate proposal that is acceptable to the Court, the Court intends to direct the immediate transfer of this action to the United States District Court, Southern District of Texas, located in Houston, Texas, through a separate transfer Order.

## IV.      Conclusion

For these reasons, the Court denies defendants' motion to dismiss and declines at this time to address the merits of Sunpro's motion and supplement to motion for temporary restraining order and preliminary injunction (Dkt. Nos. 2, 8, 11).   The Court permits counsel and the parties to confer and to file with the Court on or before 5:00 p.m. CST March 11, 2021, alternate proposals for how the parties intend to proceed.   For the reasons set out in this Order, unless a party files with the Court a timely alternate proposal that is acceptable to the Court, the Court intends to direct the immediate transfer of this action to the United States District Court, Southern District of Texas, located in Houston, Texas, through a separate transfer Order.

SO ORDERED this 10th day of March, 2021.

Kristine G. Baker
United States District Judge

28